325 So.2d 598 (1976)
STATE of Louisiana
v.
Leon CURRY.
No. 56729.
Supreme Court of Louisiana.
January 19, 1976.
*599 Vincent Wilkins, Jr., Acting Director, Roland T. Huson, III, Appellate Counsel, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Bryan E. Bush, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Defendant, Leon Curry, was convicted on a charge of armed robbery. La.R.S. 14:67. He was sentenced to imprisonment at hard labor for fifty years, to run consecutively with a sentence previously imposed. On this appeal he contends three errors in the proceeding support the contention that the conviction and sentence should be reversed.
Sometime around 7:30 on the morning of August 2, 1974, Curry entered the One Hour Martinizing Cleaners on North Acadian Drive in the city of Baton Rouge. He was dressed in a pair of cut off pants, *600 sneakers, a green shirt, and a red bandanna that covered the lower half of his face. He pointed a pistol at the woman who was employed as a clerk there and ordered her to lay on the floor, threatening to kill her if she refused. Next he rifled the cash register, emptying it of approximately $50. The clerk was also made to surrender her purse from which Curry took $1.00. He then ordered her to lock the front and rear entrance doors to the establishment, and forced her, on threat of being killed, to undress in the rear room where he raped her. She was then ordered to remain where she was. Following this he made good his escape.
Despite the mask that Curry wore, the victim recognized him by his voice, his hair, his forehead and eyes. On several previous occasions he had come into the shop and once signed a ticket to get clothes.
After Curry left, the victim called the police. When they arrived she told them she had been raped by Curry. Police investigated and took photographs of the area.

Assignment No. 4
During the trial Detective O'Brien was shown photographs referred to as Exhibits 1-4. He testified that he had seen the photographs before and the area they portrayed. He said they reflected the conditions of the area at the time he investigated the case. He also said Exhibit 4 represented the counter in the cleaners where they attempted to lift fingerprints. At this point defense counsel objected that a foundation had not been laid to show who took the photographs.
Whereupon, O'Brien testified that he ordered the photographs taken; they reflected what he saw at the time he investigated the case; and he was there when they were taken. When the State's attorney offered the photographs in evidence, defense counsel again objected that the offering was premature, the photographs had no probative value, and they would tend to mislead the jury at some later point when they were asked to view the photographs.
The objection was overruled, the photographs were admitted into evidence, and this ruling is assigned as error.
In brief to this Court defense counsel argues that the photographs could not be introduced until there was "some testimony as to their contents." Relying upon Section 214 of McCormick on Evidence 2d, he argues that a photograph is admissible as a "graphic portrayal of oral testimony" and therefore it cannot be admitted without evidence describing its content.
Pertinent parts of the rule relied upon provide that a photograph
". . . becomes admissible only when a witness has testified that it is a correct and accurate representation of relevant facts personally observed by the witness. [The witness] need only know about the facts represented or the scene or objects photographed and once this knowledge is shown he can say whether the photograph correctly and accurately portrays these facts."
According to our review of the testimony the requirements of the rule in McCormick have been met. This assignment has no merit.

Assignment No. 9
When Police Detective O'Brien was called by the State as a witness on its case in chief, the State's attorney asked that the jury be retired so that a foundation for the voluntariness of a statement made by Curry could be established. Out of the presence of the jury, O'Brien testified that Curry told him that he, Curry, knew of the laundry in question, that he had been there before, but that he knew nothing of a rape or robbery. At that time the trial judge ruled that Curry's statement was exculpatory and voluntarily made.
*601 When the jury was returned, the State's attorney asked O'Brien what Curry said. There was no objection by defense counsel. O'Brien answered:
"He told me that he knew of the place that was in questionthe laundry, that he had been there before; and that he had conducted business with the laundry, having his clothes cleaned there; that he did not know anything about a rape or robbery."
On cross-examination, O'Brien was again asked, this time by defense counsel, what it was that Curry had told him. O'Brien repeated his previous testimony. Later, defense counsel objected to the introduction of State Exhibit 8, the form containing the waiver of rights from which Curry had been read his Miranda warnings. He seeks to use this objection as a vehicle to advance his contention under this assignment of error. According to that contention, the quoted statement given by him to the police immediately after his arrest was inadmissible at the trial because the State failed to give notice prior to the opening statement as required by Article 768 of the Code of Criminal Procedure.
The contention has no merit. The statement alluded to was exculpatory and it was received in evidence without objection. La.Code Crim.Proc. art. 841.

Assignment Nos. 2, 5, 11, 13, 16, 19, 20 and 21
A series of defense objections to any evidence of, or reference in argument to, the rape form the basis of these assignments of error.
Initially the inquiry is to determine the relevancy of the evidence of rape to this prosecution. La.R.S. 15:435.
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible." La.R.S. 15:441.
The central and crucial issue of this trial was the identity of the accused. The issue was sharply formed when defendant denied that he took part in the robbery and when he called Joyce Simmons, his common-law-wife, who testified that he was with her all morning long on August 2, 1974, and therefore he could not have been the party who committed the crime. It is undisputed, also, that when the robber entered the laundry, he wore a mask to conceal his identity.
This evidence necessarily called the victim's identification of the accused into question. It was important and relevant, therefore, for the State to show the facts and circumstances which would lend reliability and credibility to her identification testimony. To do this, testimony that Curry had come into the laundry on previous occasions and had conversations with her in the past was both relevant and material.
Another and more impressive incident which enabled her to identify this defendant was the rape and the circumstances surrounding its consummation. While the rape occurred she was, of course, in the closest proximity to Curry. This gave her ample opportunity to better observe him and add to the knowledge she already possessed of his physical characteristics and identity. This evidence assumed particular relevance and probative force for it was part of the same transaction, identical in time and place, as the robbery. For the robbery was not complete as such until the accused left the scenethat is to say, turning aside to the rape was part of the entire transaction which began with Curry's entry into the shop and ended with Curry's departure from the scene with the money.
Proof of identity is accepted as one of the ultimate purposes for which evidence of other criminal conduct will be received. *602 State v. Hicks, 180 La. 281, 156 So. 353 (1934); McCormick on Evidence 2d p. 451; 1 Wharton, Criminal Evidence § 235 (12th ed. 1955); 22A C.J.S. Criminal Law § 684. Unquestionably, the fact that the accused sexually assaulted the victim of the robbery logically establishes the probative worth and reliability of the victim's identification of her assailant and, therefore, the identification of the robber.
The victim of such a rape is unlikely to attempt to prevent further steps in the theft after such a humiliating and degrading experience. Surely, if the accused had robbed the victim and hit her on the head afterwards to make good his escape, evidence of that fact would be admissible. The rape played the same part in this robbery. The experience deterred the victim from making an earlier report of the robbery thereby enabling Curry to make good his escape. Thus, aside from being relevant to evidence of identity, the rape was relevant and material to corroborate the victim's testimony to the effect that all phases of the armed robbery were committed by force and intimidation.
In addition to the relevance of the evidence of rape to the question of identification, force and intimidation, evidence of the rape was also part of the res gestae. By clear and explicit statutory enactments, what forms part of the res gestae is always admissible in evidence.
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence." (emphasis added). La.R.S. 15:447.
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." La.R.S. 15:448.
As the factual narrative discloses, the rape was inseparably connected with the robbery in time and place; it was indeed an "immediate concomitant of it," and it "form[ed] in conjunction with it one continuous transaction." When this fact is accepted, as it must be, every element of the definition of res gestae is satisfied. Without evidence of the rape the complete story of the crime could not be told.
The issue presented by this assignment has been decided by this Court in State v. Hatch, 305 So.2d 497 (La.1975) and State v. Williams, 263 La. 755, 269 So.2d 232 (La.1972). When evidence of other crimes from the one charged are so closely linked as to form part of the res gestae the evidence may be received under the authority of Sections 447 and 448 of Title 15 of the Revised Statutes. State v. Clark, 220 La. 946, 57 So.2d 904 (1952). Other persuasive and respectable authority holds that when a collateral offense, or extraneous offense as it is sometimes called, forms part of the res gestae, evidence of it is admissible. State v. Jugger, 217 La. 687, 47 So.2d 46 (1950), and cases cited therein.
These assignments of error are without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
CALOGERO, J., concurs and assigns reasons.
CALOGERO, Justice (concurring).
I concur in the affirmance of the conviction. However, with respect to Assignment No. 9 I do not believe that the statement in question was entirely "exculpatory."