481 So.2d 729 (1985)
STATE of Louisiana
v.
Alvin TRAHAN.
No. KA 85 0682.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
*731 Walter K. Naquin, Jr., Asst. Dist. Atty., Thibodaux, for plaintiff-appellee State of Louisiana.
C. Alan Lasseigne, Thibodaux, for defendant-appellant Alvin Trahan.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
Alvin Trahan was charged by indictment with the second degree murder of Gerald Wescovich in violation of LSA-R.S. 14:30.1. The defendant pled not guilty and, after trial by jury, was convicted of manslaughter. Following a presentence investigation, the defendant was sentenced to twenty-one years at hard labor.
The defendant brings this appeal urging five assignments of error:
1. The trial court erred in failing to suppress inculpatory statements made by the defendant.
2. The trial court erred in failing to promptly rule that the court appointed attorneys could continue using the private investigator they had hired and in failing to allow adequate funds for the private investigator.
3. The trial court erred in allowing a co-defendant to testify as to inculpatory statements made by the defendant.
4. The trial court erred in holding that the assistant district attorney did not comment on the defendant's failure to testify.
5. The trial court erred in imposing an excessive sentence.
*732 This case arises from a homicide committed by the defendant and a co-defendant, Hanley Breaux, in the early morning hours of April 23, 1982. In return for his testimony against the defendant, Hanley Breaux reached a plea bargain with the state. Breaux pled guilty to manslaughter and received a sentence of fifteen years at hard labor. The defendant was tried for second degree murder.
During the late night hours of April 22, 1982, defendant and Hanley Breaux visited several bars in Lafourche Parish. While at one of these night spots, they encountered the victim and began drinking with him. In the early hours of April 23, the three left the bar in the defendant's car and drove to a secluded area behind South Lafourche High School. When they reached the Britton Canal pumping station, Breaux and the defendant beat, kicked, and stabbed the victim. Then they dragged his body into the canal and left him for dead. A short time later, the defendant discovered that he had lost his false teeth, and the two returned to the pumping station to search for them. When they arrived, they found that the victim had crawled up onto the road and was waving at their headlights for help. The defendant, who was driving, ran over the victim. Again, they dragged the victim into the canal. This time, they threw large stones at the victim's floating body until they were sure that he was dead.
ASSIGNMENT OF ERROR NUMBER ONE:
The defendant contends that the trial court should have suppressed his inculpatory statements because (1) there was no probable cause to arrest him, and (2) at the time he was interrogated he was intoxicated and very upset.
Louisiana Code of Criminal Procedure article 213 provides:
A peace officer may, without a warrant, arrest a person when:
. . . . .
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer....
When Lafourche Parish Sheriff's deputies arrested the defendant, they clearly had reasonable cause to do so. It was apparent from the victim's body that there had been some sort of a struggle. At the scene of the crime, a set of false teeth was discovered. During their investigation, Sheriff's deputies received information from Helen Galjour that she had seen the defendant limping on the afternoon of April 23. When she asked the defendant what had happened, he told her that he had hurt his foot and lost his teeth in a fight on the previous night. Also, a deputy had observed the defendant and Breaux at the scene of the crime approximately five o'clock that afternoon.
Probable cause exists when the facts and circumstances known to the arresting officer, and of which he has reasonably trustworthy information, are sufficient to justify a person of ordinary caution in believing that the person to be arrested has committed a crime. State v. Billiot, 370 So.2d 539, 543 (La.1979), cert. denied, 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979). We find that the sheriff's deputies had probable cause to arrest the defendant under these circumstances.
The second argument under this assignment of error deals with the defendant's state of mind during interrogation. He argues that inculpatory statements made under custodial interrogation should have been suppressed because he was intoxicated and very upset.
Before a confession can be admitted into evidence, the state has the burden of affirmatively showing that it was made freely and voluntarily, and not influenced by fear, duress, intimidation, menaces, threats, inducements, or promises. La.C. Cr.P. art. 703(G); LSA-R.S. 15:451. The same requirement applies to inculpatory statements. State v. Jackson, 414 So.2d 310 (La.1982). Furthermore, if the statement was elicited during custodial interrogation, the state must show that the defendant *733 was advised of his constitutional rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Intoxication can render a statement involuntary if the intoxication is of such a degree that it negates defendant's comprehension and renders him "unconscious of the consequences of what he is saying." State v. Narcisse, 426 So.2d 118, 125-26 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). Whether intoxication exists and whether it is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. State v. Robinson, 384 So.2d 332 (La.1980).
The defendant was arrested on April 23, at approximately seven-thirty in the evening. The record reflects that the defendant was read his Miranda rights before he was interrogated. At the hearing on the motion to suppress, one deputy, Chris Boudreaux, indicated that, at approximately one o'clock in the morning (more than two hours after the interrogation), the defendant appeared to be intoxicated. However, Deputy Boudreaux was not present at the defendant's arrest or interrogation. He was merely called in to transport the defendants back to the jail in Thibodaux. Furthermore, Deputy Boudreaux testified that he did not remember smelling alcohol on the defendant and that his conclusion that the defendant was drunk was based solely upon the way the defendant was acting.
Most of the testimony at the motion to suppress indicated that the defendant had been advised of his rights and that he was alert during interrogation. Major Doucet, Major Authement, and Deputy Chiasson were present when the defendant was arrested, and during various stages of the custodial interrogation. Major Doucet testified that the defendant did not appear to be intoxicated and was not crying. Deputy Chiasson testified that he did not see the defendant crying. Major Authement also stated that he did not believe the defendant was intoxicated, and that he did not see the defendant crying that night. Furthermore, there was no evidence that the defendant was upset and crying until he confronted his wife, which was after the interrogation had ended.
Perhaps the most persuasive testimony indicating that the defendant was not intoxicated came from the defendant's wife. Although she stated that he was "tipsy" and that he "looked like he had been drinking", she also stated that he was coherent and that he understood what was happening. Therefore, we conclude that any inculpatory statements given by the defendant during custodial interrogation were made voluntarily.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO:
The defendant contends that he was unable to prepare a proper defense because he was not given "quicker" access to a private investigator. He also argues that the funds granted for the services of a private investigator were very limited. More specifically, the defendant argues that he was prejudiced by the delays caused by numerous hearings to determine who would pay for the private investigator and how much was to be paid.
Furnishing counsel to the indigent defendant is not enough if counsel cannot secure information upon which to construct a defense. The Louisiana Supreme Court has recognized that the state should supply funds upon a showing by the defense that the indigent accused is unable to obtain existing evidence crucial to the accused. State v. Madison, 345 So.2d 485, 490 (La.1977).
In the instant case, the record reflects that the two defense attorneys hired the private investigator soon after they were appointed. However, they had not requested the trial court's permission to do so, nor had any guidelines been established for the payment of a private investigator. After several hearings, the defendant made a sufficient showing of need to justify the procurement of an investigator. The trial *734 court ordered the Lafourche Parish Indigent Defender Board to pay a bill of $1,173.20, which was submitted by the private investigator. Although the record is unclear on this point, it seems that after the initial bill of $1,173.20 was submitted, a ceiling of $300.00 was placed on further investigative services. However, the record contains additional requests for investigative services totaling $800.00, which seem to have been approved by the trial court.
The record reflects that the first of the defendant's two defense attorneys was appointed on June 16, 1982. The private investigator's first bill was dated July 14, 1982. Therefore, contrary to his argument, it seems that the defendant received prompt access to a private investigator. The record also indicates that almost $2,000.00 was authorized for investigative services. The defense attorneys had requested a private investigator in order to track down the owner of a pickup truck, which was allegedly spotted at the crime scene near the time of the homicide, and to locate a witness named Leroy Guidry. We find that the funds authorized for private investigative services in this case were more than sufficient to accomplish these two tasks. Finally, any delays caused by the hearings to determine who would pay for investigative services, and how much was to be paid, might have been avoided if defense counsel had obtained permission from the trial court before hiring a private investigator.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER THREE:
The defendant contends that the trial court erred in allowing Hanley Breaux to testify concerning an inculpatory statement made by the defendant, since the state did not give notice before trial of its intention to use the statement in evidence as required by La.C.Cr.P. art. 768. We find that Breaux's statement was not admissible because the state failed to give the defendant proper pretrial notice as required by art. 768 and that the statement was not part of the res gestae. Nevertheless, under the particular circumstances of this case, the introduction of the inculpatory statement was harmless error.
Hanley Breaux testified that he and the defendant returned to the scene of the crime at approximately five o'clock the following afternoon. They were searching for the defendant's false teeth, which had been lost during the struggle on the previous night. Breaux testified that, when they were confronted by a deputy and asked what they were doing, the defendant replied that they were looking for wood to build a doghouse. The defendant objected to this statement, arguing that it was not a part of the res gestae and that Code of Criminal Procedure article 768 had not been followed.
La.C.Cr.P. art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
The trial court found that the defense had not had the opportunity to discover this statement in advance of trial. However, he allowed the statement into evidence as part of the res gestae. Res gestae is defined in LSA-R.S. 15:447 as follows:
Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
We find that this statement was not admissible because it was not part of the res gestae. This statement was made to the deputy more than twelve hours after the crime had been committed. The statement *735 did not occur under the immediate pressure of the criminal act. The statement was not a necessary incident of the homicide, an immediate concomitant of it, nor a declaration which formed in conjunction with it one continuous transaction. See State v. Gautreaux, 377 So.2d 289, 291 (La.1979).
Under the circumstances peculiar to this case, however, we conclude that the defendant's rights were not substantially prejudiced by introduction of the statement and that the trial court's error was harmless. Deputy Plaisance, the deputy who observed Trahan and Breaux at the scene of the crime the following afternoon, had previously testified, without defense objection, concerning the exact same statement at issue in this assignment. Therefore, since the jury had already heard this statement from another source, we are convinced that the defendant's rights were not substantially prejudiced thereby and that the error was harmless.[1]
This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER FOUR:
The defendant claims that the trial court erred in refusing to grant a mistrial due to the prosecutor's alleged reference to the defendant's failure to testify during the prosecutor's rebuttal closing argument.
The final paragraph of the prosecutor's closing argument is as follows:
Ladies and gentlemen, I ask you as reasonable people, to deliberate in a reasonable manner. To reach your verdict based upon the positive, direct evidence in this case. Not speculation. Not guess work. The evidence is overwhelming. The evidence is uncontradicted. Alvin Trahan aided, assisted, Hanley Breaux in the commission of this crime. And for that he should be found guilty.
Thank you very much, ladies and gentlemen.
The defendant argues that the word "uncontradicted" is a comment on the failure of the defendant to testify.
La.C.Cr.P. art. 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(3) The failure of the defendant to testify in his own defense;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
The state argues in brief that the remark did not refer to the failure of the defendant to testify on his own behalf. Rather, the state maintains that, taken in the context of the entire closing argument, the remark simply referred to the strength of the state's case as a whole.
In State v. Latin, 412 So.2d 1357, 1362 (La.1982), the Louisiana Supreme Court commented:
References made in closing argument that the State's case stands uncontroverted have been frequently upheld by this Court. (citations omitted). A statement that the State's theory of the case remains unassailed encompasses the entire case presented by the defense and does not focus on the defendant's failure to take the stand. However, when the defendant is the only person who can dispute the testimony, a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure *736 to testify. See State v. Perkins, 374 So.2d 1234, 1237 (La.1979).
It is significant to note that, prior to describing the evidence as "uncontradicted", the prosecutor summarized the testimony of the state's witnesses and the physical evidence discovered. Immediately before the remark in question, the prosecutor stated: "The evidence is overwhelming." Considering the context in which the remark was made, the trial court concluded that it was not a reference to the defendant's failure to testify. Upon review, it is likewise apparent to this Court that the prosecutor was referring to the state's case as a whole, rather than to the defendant's failure to testify. Moreover, in light of the overwhelming evidence of the defendant's guilt, we further conclude that any prejudice which may have arisen from the prosecutor's remark was harmless error. La.C. Cr.P. art. 921.
Therefore, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER FIVE:
The defendant argues that his sentence is excessive, in light of the fact that a co-defendant received a lesser sentence. Hanley Breaux, a co-defendant, pled guilty to manslaughter and agreed to testify against the defendant. Breaux received a sentence of fifteen years at hard labor. After trial by jury on the charge of second degree murder, the defendant was convicted of manslaughter and received the maximum sentence of twenty-one years at hard labor.
There is nothing in the law that requires that a sentencing judge treat co-defendants equally. State v. Rogers, 405 So.2d 829, 831 (La.1981). In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the judge shall exercise his sentencing discretion to impose sentences graduated according to the individualized circumstances of the offense and of the offender. State v. Sepulvado, 367 So.2d 762, 766 (La.1979).
The Code of Criminal Procedure sets forth items which must be considered by the trial court before passing sentence. La.C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of article 894.1, but the record must reflect that he adequately considered the guidelines. State v. Davis, 448 So.2d 645 (La. 1984). In light of the criteria expressed by article 894.1, a review of the individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Cox, 369 So.2d 118 (La.1979).
The sentencing record reflects that the trial court reviewed the presentence investigation and considered the circumstances of this particular crime. The trial court stated:
The pre-sentence investigation which was ordered was duly submitted and it is noted that although you have a record of sixteen previous arrests in Louisiana and Florida, this is only your second felony conviction. I am imposing the maximum sentence allowed by law not because of your impressive rap sheet, but because the crime for which you stand convicted was the most brutal and heinous taking of a man's life. It was not enough that you and your partner in crime stabbed and beat the victim and then threw him into the canal to drown, the evidence indicated that when you returned to look for the false teeth you had lost in the scuffle with the victim, you deliberately ran over him with your car when you saw that he had dragged himself out of the canal. Again he was thrown into the water and then when he began again to try to save himself, heavy objects were thrown at him until his death in the canal was assured.
The trial court has wide discretion in the imposition of a sentence. Within the statutory limits and given compliance with the sentencing criteria of art. 894.1, the sentence will not be set aside absent a manifest abuse of discretion. State v. Wardlow, 448 So.2d 257 (La.App. *737 1st Cir.1984). The trial court satisfied the criteria set forth in art. 894.1. Under the circumstances, we cannot say that this sentence is excessive.
This assignment of error is without merit.
For the above and foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] See also State v. Gautreaux, supra, and State v. Billiot, 421 So.2d 864, 867-68 (La.1982), for the proposition that where there is overwhelming evidence of defendant's guilt, the improper admission of an inculpatory statement is harmless error.