577 So.2d 1120 (1991)
STATE of Louisiana
v.
Vinnie McGUIRE a/k/a James O'Laughlin.
No. 90 KA 0666.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Writ Denied June 21, 1991.
*1121 William R. Campbell, Jr., New Orleans, David J. Knight, Asst. Dist. Atty., Covington, for State.
James H. Looney, Covington, for defendant.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
Vinnie McGuire, a/k/a James O'Laughlin (defendant), was charged by grand jury indictment with first degree murder. LSA-R.S. 14:30. He pled not guilty and not guilty by reason of insanity and, after trial by jury, was found guilty as charged. The court sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence after the jury could not reach a unanimous verdict on capital punishment. Defendant has appealed, alleging two assignments of error:[1]
1. The trial court erred in allowing evidence of the defendant's Florida escape to be admitted as a part of the res gestae.
2. The evidence was insufficient to support the instant conviction.

FACTS
At 11:48 p.m. on October 13, 1988, William Beebe (victim), a twenty-nine-year-old teacher, checked into the Budget Host Hotel in Slidell, Louisiana. Around noon the following day, the hotel manager, Glen Hensler, found the victim's nude, lifeless body on the floor of Room 113 between the two beds. The police were summoned immediately. The victim's head, face, and upper body were covered with blood. There were blood spatters on the floor and wall near the victim's head. A bloodsoaked towel was wrapped around the victim's neck. A subsequent autopsy revealed that the cause of death was asphyxia due to strangulation. Inside the room, the police found empty beer bottles from two eight-packs of beer, a jar of Vaseline, and some condoms, including one that had been opened. The victim's car, a Ford Thunderbird, could not be located.
At approximately 1:00 a.m. on October 17, 1988, the defendant was arrested in Malibu, California, after he was discovered sleeping in the victim's car. He gave a tape-recorded statement wherein he indicated that he had killed the victim after a fight erupted during a homosexual encounter. The defendant explained that he met the victim at a truck stop in Slidell near Interstate 12; that the victim offered to help defendant, telling him that he was going to rent a room for the night, and offered to share the room; that the victim checked into Room 113 of the Budget Host Hotel; that they decided to go to a nearby bar and have some drinks; that after they returned to the hotel, the victim went to a nearby Time Saver convenience store and bought beer, Vaseline, and condoms; that the victim performed fellatio on him; that when he lost interest and either was unwilling or unable to anally penetrate the victim, the victim became angry with him, causing a fight; that he admitted killing the victim, but stated that he did not mean to hurt him; and that he admitted he took the victim's car and fled but did not rob the victim.
In said statement, defendant did not mention that he had escaped from the Florida *1122 Department of Corrections at approximately 1:00 p.m. on October 13. The defendant had been incarcerated in Cross City Correctional Institute and was assigned to a work crew mowing the grass alongside the highway in the area of Jena, Florida. At approximately 1:00 p.m., the defendant escaped from the work detail in a county pickup truck, which was subsequently discovered at a Holiday Inn parking lot in Crestview, Florida.
In addition to taking the victim's car, the defendant took the victim's watch and may have taken his money. When the victim's body was discovered, his wallet was empty and his watch was not located. When the defendant was arrested in California, a Seiko watch was found in his possession. This watch was identified by the victim's brother, Fred Beebe, as belonging to the victim.

ASSIGNMENT OF ERROR NO. ONE:
The defendant contends that the trial court erred in allowing evidence of the defendant's Florida escape to be admitted as part of the res gestae.
The State filed a notice of intent to use evidence of other crimes. At a pretrial hearing, the trial court ruled that the evidence of the defendant's escape from the Florida Department of Corrections would be admissible at trial pursuant to Louisiana Code of Evidence Article 404 B(1). In an unpublished decision, the defendant's writ application contesting the trial court's ruling on this issue was denied by this Court. State v. McGuire (docket number 89 KW 0980, decided June 23, 1989). At the trial, evidence of the defendant's Florida escape was admitted, but no reference was made to the conviction(s) for which the defendant was incarcerated.
Louisiana Code of Evidence article 404 B(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The second sentence of Louisiana Code of Evidence article 404 B(1) refers to crimes evidence which was previously admissible under LSA-R.S. 15:445-446 (Prieur[2] evidence) and LSA-R.S. 15:447-448 (res gestae). See L.C.E. art. 404, Comments (k) & (m). Actually, the trial court ruled that the evidence of the defendant's Florida escape was admissible both as evidence of motive, intent, etc., and because it was an integral part of the act or transaction (res gestae). For the reasons which follow, we find that the trial court did not err when it ruled that the escape was relevant and admissible evidence under both theories.
In his brief to this Court, the defendant concludes that the Florida escape was not relevant to proof of intent or motive. Concerning other crimes evidence relevant to prove system or intent, the defendant cites State v. Talbert, 416 So.2d 97, 99-100 (La. 1982), for the proposition that "such evidence must relate to offenses which are so peculiarly distinctive that logically they are the work of the same person." While this proposition is contained in Talbert and is a correct statement of the law in relation to the use of other crimes evidence to prove system or modus operandi, it has no relevance to proof of intent. Instead, the test for determining the admissibility of other crimes evidence used to prove intent is explained in State v. Kahey, 436 So.2d 475, 488 (La.1983). Before other crimes evidence is admissible as proof of intent, three prerequisites must be satisfied: (1) the prior acts must be similar; (2) there must be a real and genuine contested issue of intent at trial; and (3) the probative value of the evidence must outweigh its prejudicial effect.
Here, there was a real and genuine contested issue of intent. The defense contended *1123 that the defendant committed manslaughter by killing the victim in a fight which erupted during a homosexual encounter. The defendant contends that he did not initially intend to rob the victim and that the killing took place first and the taking of the victim's automobile was an afterthought. As for the first requirement of similarity between the prior act and the charged offense, there was a similarity in the sense that, once the defendant escaped, his commission of this murder and robbery facilitated his remaining at large. The third factor, balancing the probative value against the prejudicial effect of such evidence, will be addressed later.
The defendant correctly cites State v. LaFleur, 398 So.2d 1074, 1080 (La.1981), and State v. Sutfield, 354 So.2d 1334, 1337 (La.1978), for the proposition that, in order to show motive, "the established motive must be factually peculiar to the victim and the charged crime." The defendant concludes that, under this test, evidence to prove motive is ruled out. We disagree. Because he was an escapee, the defendant needed money and transportation to remain at large. The instant murder facilitated the defendant's escape. This motive, the furtherance of his escape, was "factually peculiar to the victim" because the victim had a car and had befriended the defendant in such a way that it would be relatively easy for the defendant to commit murder and robbery and flee the scene undetected.
The defendant also contends that the evidence of his escape was not a part of the res gestae. He cites State v. Wingo, 457 So.2d 1159, 1166 n. 10 (La.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2049, 85 L.Ed.2d 322 (1985), and State v. Foy, 278 So.2d 38 (La.1973), for comparison purposes. These defendants had escaped from prison and committed murder and robbery to facilitate their escape. The defendant argues that Foy and Wingo, wherein the escape was found to be a part of the res gestae of the subsequent offense, are factually distinguishable from the instant case because his escape was too far removed in time and space from the murder and robbery of the victim in Slidell. The defendant also cites State v. Gremillion, 542 So.2d 1074, 1077 (La.1989), for the proposition that an interval of nineteen hours is too long to constitute res gestae.
In fact, the majority of res gestae cases addressing the question of the time interval between the offense and the prior or subsequent act claimed to be a part of the res gestae have dealt with hearsay statements rather than acts or events.[3] Of course, the greater the time interval, the less likely the statement could be considered impulsive or spontaneous. However, we are considering an act by the defendant, not a statement. His escape in Florida occurred approximately ten to eleven hours before he met the victim.[4] The instant offense did *1124 not occur in a vacuum. See State v. Edwards, 406 So.2d 1331, 1351 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). The defendant's escape led to the commission of this offense and, without this evidence, "the complete story of the crime could not be told." State v. Curry, 325 So.2d 598, 602 (La. 1976).
For the above reasons we conclude that, pursuant to Article 404 B(1), the evidence of the defendant's Florida escape was admissible both to prove motive, intent, etc., and because it was an integral part of the subsequent murder and robbery of the victim. Furthermore, we conclude that, although evidence of this escape was prejudicial to the extent that it indicated the defendant had been convicted of an offense in Florida, the evidence was far more probative than prejudicial.
To this extent, we note that the trial court correctly stated at the pretrial hearing that other crimes evidence used to prove knowledge, system, intent, etc. was subject to a balancing test under Louisiana Code of Evidence article 403 but the type of evidence formerly admissible as res gestae was not subject to such a balancing test. Apparently, the trial court made this distinction because, under former LSA-R.S. 15:447 and the jurisprudence, res gestae was always admissible. However, the use of the word "may" in Article 404 B(1) indicates that both of these types of other crimes evidence are now subject to the balancing test of Article 403. See G. Pugh, Handbook on Louisiana Evidence Law, p. 220, author's note (4) to L.C.E. art. 404B(1) (1990 ed.). In any event, as noted above, we find that the evidence of the defendant's escape was more probative than prejudicial and, therefore, was properly introduced at the trial.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TWO:
The defendant contends that the evidence was insufficient to support his conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
At the time of this offense, LSA-R.S. 14:30 provided, in pertinent part:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, first degree robbery, or simple robbery;...
LSA-R.S. 14:64 A provides:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of *1125 force or intimidation, while armed with a dangerous weapon.
LSA-R.S. 14:65 A provides:
Simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
The defendant did not testify at the trial. However, his tape-recorded confession was played to the jury. Therein, the defendant explained that a fight erupted during a homosexual encounter with the victim. In his brief to this Court, the defendant concedes that a homicide was established and he does not claim self-defense. Instead, the defendant contends that the jury should have returned a verdict of manslaughter or, at most, second degree murder. Specifically, he argues that he was provoked by the victim and that he lacked the specific intent to kill or inflict great bodily harm.
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10. Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984). Photographs taken at the crime scene and the autopsy indicate that the defendant struck the victim in the head twice with a blunt object before strangling him with a towel. Dr. Charles Crumpler, a forensic pathologist, testified that strangulation would cause a loss of consciousness approximately twenty seconds after the oxygen supply to the brain was impaired, but death would not result unless such pressure was maintained for at least four minutes. The specific intent to kill or inflict great bodily harm could reasonably be inferred from this manner of death and from the severity of the victim's head injuries.
The defendant also argues that a robbery did not occur because robbery required the taking of something of value "from the person of another or that is in the immediate control of another." He argues that, once the victim was dead, he "had no control of anything." We reject this argument. Having recently escaped from prison in Florida, the defendant needed money and transportation to further his escape. Murdering the victim facilitated the robbery of his automobile, his watch and perhaps his money. See State v. Nelson, 459 So.2d 510, 518 (La.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985).
After a careful review of the record, we find that a rational trier of fact, viewing the evidence in a light most favorable to the state, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of first degree murder. See State v. Mussall, 523 So.2d 1305 (La.1988). This assignment of error is meritless.
For the reasons stated above, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Additionally, in his brief to this Court, although not an assignment of error, defendant made a request for patent error review. This Court routinely reviews the record for errors patent, whether or not such a request is made by a defendant. Under La.C.Cr.P. art. 920(2), we are limited in our patent error review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no patent errors.
[2] State v. Prieur, 277 So.2d 126 (La.1973).
[3] See State v. Gremillion, 542 So.2d 1074, 1077 (La.1989) (victim's statement to a police officer nineteen hours after the offense was not admissible as res gestae because the statement "was too far removed to be considered spontaneous and was more narrative than impulsive."); State v. Trahan, 543 So.2d 984, 999 (La.App. 3d Cir.), overruled on other grounds, State v. Simpson, 551 So.2d 1303, 1304 n. 3 (La.1989) (defense witness could not relate hearsay conversation between defendant and the victim which occurred fifteen hours before defendant shot the victim because this conversation was not a part of the res gestae); State v. Trahan, 481 So.2d 729, 734-735 (La.App. 1st Cir.1985) (the defendant's inculpatory/exculpatory statement to a police officer made twelve hours after the offense when the defendant and a co-defendant returned to the scene of the crime was not admissible because it was not part of the res gestae); State v. Smith, 466 So.2d 1343, 1351 (La.App. 3d Cir.1985) (the defendant's inculpatory statement to a witness made on the day after the armed robbery was not admissible as res gestae because it was not spontaneous and was more like a narrative of the events); and State v. Glaze, 439 So.2d 605, 609 (La.App. 1st Cir. 1983) (the defendant's recorded, custodial statement made thirteen hours after the crime was not admissible as res gestae).
[4] At the pretrial hearing, the trial court based its ruling on the admissibility of evidence of the defendant's escape on a time interval of approximately thirteen hours between the escape and this offense. In fact, the State did not (and possibly could not) establish the exact time of death. At the trial, Dr. Crumpler testified that the autopsy began approximately 8:00 a.m. on October 15. The autopsy protocol supplied to the defense in discovery indicated that the estimated interval of the time of death to autopsy examination was twenty-four to thirty-six hours, being between 8:00 p.m. on October 13 and 8:00 a.m. on October 14. However, according to the registration card, the victim registered at the hotel at 11:48 p.m. on October 13. According to the defendant's version of events given in his tape-recorded statement, there was a period of perhaps an hour or two during which they went to a nearby bar and the victim went to a convenience store to buy beer, Vaseline, and condoms. Therefore, it appears that the offense occurred sometime between 1:00 a.m. and 8:00 a.m. on October 14, a time interval of between twelve to nineteen hours after the defendant's escape.