719 So.2d 1134 (1998)
STATE of Louisiana
v.
Lonnie BILBO, Jr.
No. 97 KA 2189.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
*1135 Emma J. Devillier, 1st Assistant District Attorney, Plaquemine, LA, for appellee State of Louisiana.
Margaret S. Sollars, Thibodaux, LA, for defendant-appellant Lonnie Bilbo, Jr.
Before FITZSIMMONS and GUIDRY, JJ., and CHIASSON,[1] J. Pro Tem.
FITZSIMMONS, Judge.
Defendant, Lonnie Bilbo, Jr., was charged by grand jury indictment with aggravated kidnapping, a violation of La. R.S. 14:44. Defendant filed a motion to quash the indictment on the basis that the prosecution was not timely instituted. The trial court denied the motion. Following a jury trial, defendant was found guilty as charged. The trial court sentenced defendant to life imprisonment at hard labor. Defendant has appealed, raising three assignments of error.

*1136 Facts

On December 23, 1982, P.S.[2] was driving home for the Christmas holidays, traveling on I-10 from Houston to New Orleans. Sometime after dark, she entered Iberville Parish. Near the Whiskey Bay area, she observed someone waving a white flag for assistance. Seeing four people standing on the side of the road beside a disabled vehicle, she stopped to offer assistance. Because two of the individuals had long hair, she had incorrectly assumed the group consisted of two men and two women. However, she soon discovered all four individuals were men. Although she did not have the tire tool the men requested, she offered to drive one of them to a gas station to get help. All four men wanted to get in the car with her, but she refused, agreeing to take only one. After conferring, the men chose an individual who, unknown to the victim, was referred to by the others as "Mad Dog." Walking back toward P.S., Mad Dog and defendant appeared to confer further. She heard defendant tell him, "You know what we need." Mad Dog replied in the affirmative, then got into the car with P.S.
The ride was uneventful until the victim started to exit the interstate to find a gas station. At that point, Mad Dog grabbed her around the neck and squeezed, causing her to have difficulty breathing. Accordingly, she complied with his demand to pull over. Mad Dog told her he and his friends were in a lot of trouble and needed her car. He refused her request that he take the car, but not her. He made her switch places with him, then began driving back to where they had left his friends. When they reached the spot on I-10 where they had left the others, they saw a police car stopped by the disabled car and the three men walking away in the emergency lane. Mad Dog drove past. Eventually, Mad Dog returned, after the police car was gone, and picked up his friends.
P.S. got out of the car on the passenger side, and the other men started "piling in" the car. She tried to convince them to take the car and leave her, but defendant replied, "No, I want some p___y." He then pushed her into the front seat, got in beside her, and immediately began groping her body. When P.S. resisted his advances, defendant threatened to kill her and throw her body into the swamp. Defendant instructed Mad Dog to pull off the interstate and drive down an unpaved road leading into the swamp.
When they stopped in a remote area, everyone exited the car, and the men again conferred. P.S. stated that defendant, who appeared to be the group's ringleader, told her, "If you just do everything we say, we will let you live." He then pushed her into the car and raped her. Afterwards, he got out of the car and told one of the other men, "You do her." Each of the other three men raped her in turn.
During this time, defendant was looking through the victim's purse. He found an ATM card and demanded the PIN number from her. When she told him she did not have a PIN number because it was a brand new card, he started punching and slapping her, threatening to kill her if she did not give him the number. She made up a number to give him. Shortly thereafter, the men pulled her to the back of the car. Mad Dog began to beat her and, using a pocketknife they had found in her purse, stabbed her in the chest. When Mad Dog began swinging objects taken from the car's trunk at her, the other men stepped back to give him room. She seized the opportunity to jump across a ditch and run into a thicket of brambles. At least one of the men unsuccessfully attempted to follow her. She hid behind a bush and, after some time, heard car doors slam and a car driving off. She waited awhile longer to be certain the men were gone, then managed to walk to a service station and call the police.
Defendant was subsequently arrested in Jacksonville, Florida, on January 2, 1983, after he was involved in a traffic accident while driving the victim's stolen car. P.S. identified him from a photographic lineup as one of her attackers. Defendant was indicted for the instant offense on December 14, 1995.

*1137 INSTITUTION OF PROSECUTION

In his first assignment of error, defendant argues the trial court erred in failing to quash the indictment because the prosecution was not timely instituted.
The instant offense occurred on December 23, 1982. The indictment charging defendant with this offense was filed on December 14, 1995, nearly thirteen years later. Defendant contends the prosecution was barred by La. Code Crim.P. art. 572, which provided at the time of the offense that a prosecution of an offense necessarily punishable at hard labor must be instituted within six years of the offense.
Both currently and in 1982, the crime of aggravated kidnapping is punishable by imprisonment for life at hard labor. See La. R.S. 14:44. Thus, at the time the instant offense was committed, the time limitation for the institution of prosecution for a charge of aggravated kidnapping was six years. However, Acts 1984, No. 926, § 1 (effective September 3, 1984), amended La.Code Crim.P. art. 572 to make it inapplicable to crimes punishable by life imprisonment. In conjunction therewith, Act 926 also amended La.Code Crim.P. art. 571 to provide that there be no time limit for instituting prosecution for crimes subject to a penalty of life imprisonment.
The dispositive issue presented by defendant's motion to quash is whether the 1984 amendments to La.Code Crim.P. arts. 571 and 572 are applicable to the instant offense, which occurred in 1982. Defendant argues they are not, because the law in effect at the time a crime is committed controls the time limitation for instituting prosecution. He further asserts that the application of the subsequently increased time limitation would impair his substantive rights and violate the constitutional prohibition against ex post facto laws. We disagree.
In State v. Ferrie, 243 La. 416, 144 So.2d 380 (1962), the Louisiana Supreme Court rejected the defendant's argument that the application of a time period for instituting prosecution, which was extended after the commission of the charged offense, violated the ex post facto provisions of the United States and Louisiana Constitutions. In all pertinent respects, the factual situation presented in Ferrie was virtually identical to that in the instant case. The defendant in Ferrie was charged with indecent behavior with juveniles occurring on March 26, 1960. At the time of that offense, the applicable prescriptive period was one year after the offense was made known. By Act 25 of 1960, effective July 27, 1960, the prescriptive period was increased to two years. The defendant was subsequently charged by bill of information filed on December 15, 1961, more than one year after the offense was made known but less than two years after the offense was committed. In determining that Act 25 was not an ex post facto law, the Supreme Court made the following observations:
As we understand this case the substantial rights of the accused had never vested, for the time limitation or prescription of the offense which was in effect at the date of the alleged commission of the offense had not fully run when the amendment became effective.
* * * * * *
... [T]he State in criminal matters reserves the right to change the prescription or period of limitation of criminal offenses until it has accrued to the benefit of the accused. Until it has accrued, it can be said, the rights of the accused have not become vested and are subject to regulation or change.
... But when a right of grace has been extended the State relinquishes the right to prosecute once the statute of limitations has run; until it does run, the State's right to prosecute is retained and may be extended at the will of the State.
No substantial right of the accused is affected by such a change, nor has the situation been changed to the disadvantage of the accused, for the time during which he may be prosecuted, not having run, deals only with the procedure attached to his conviction or acquittal. The penalty of the offense has not been changed to the disadvantage of the accused, the rules of evidence have not been amended, nor has the definition of the crime affecting the *1138 facts been altered in any way. What has been altered is a procedural right, and no undue disadvantage to the accused results therefrom for he has acquired no advantage until the period of limitation has run. Ferrie, 243 La. at 425-428, 144 So.2d at 383-84.
See also State v. Adkisson, 602 So.2d 718 (La.1992).
The crime of which defendant is accused in the present case occurred on December 23, 1982. Less than two years later, and prior to the expiration of the then applicable six year time limitation, the period for instituting prosecution for this crime was extended by Act 926 of 1984, which amended articles 571 and 572. Thus, as in Ferrie, the extended time period for instituting prosecution did not affect any substantive right of defendant, since the time limitation in effect on the date the offense was committed had not fully run when the amendments became effective. Accordingly, Act 926 of 1984, providing that there be no time limit for prosecuting offenses punishable by life imprisonment, is applicable to the instant case. The state was aware of the extension of the time period, and defendant's incarceration in Florida for another kidnapping. As was the state's right, it chose to institute prosecution in 1995, apparently after it became known that Florida was releasing the defendant from prison. The trial court correctly denied defendant's motion to quash.

INTRODUCTION OF OTHER CRIMES EVIDENCE
Defendant asserts the trial court erred in allowing evidence of crimes committed by him six days earlier to be admitted into evidence at trial.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Parker, 625 So.2d 1364, 1371 (La.App. 1st Cir.1993), writ denied, 93-2832 (La. 2/25/94); 632 So.2d 761. La.Code of Evid. art. 404 B(1) provides that:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Prior to trial, the state gave notice that it intended to introduce evidence at trial of a kidnapping and robbery which defendant committed in Florida six days prior to the instant offense. The substance of this evidence was that defendant and Nathaniel York, also an accomplice in the Florida incident, went to a car dealership in Pensacola, Florida and pretended to be interested in purchasing a Camaro. When the salesman accompanied them on a test ride, they kidnapped him. After defendant threatened to kill him if he did not cooperate, the salesman turned over his wallet, credit cards, and money to defendant, and was released unharmed.
Defendant and York then drove the stolen Camaro to California, where they visited with relatives of York for a few days. On the trip back to Florida, they picked up Mad Dog in a bar in Texas, as well as another man, who was hitchhiking. As the four men passed through Louisiana on I-10, they were involved in an accident when Mad Dog began racing with a motorcycle. He lost control of the Camaro and hit the side of a bridge, disabling the car. Shortly thereafter, P.S. was driving past and stopped to offer assistance.
At the Prieur hearing, the state indicated it wished to introduce evidence regarding the *1139 Florida kidnapping as part of the res gestae of the instant offense and to establish defendant's motive, intent, and identity. However, because of the lapse of approximately six days between the Florida kidnapping and the kidnapping of P.S., the trial court concluded that the Florida incident was not part of the res gestae of the instant offense. The trial court rejected res gestae as a ground for introduction of the other crimes evidence because of the amount of time which lapsed between the prior crimes and the charged offense. The court further held that, while the other crimes evidence was relevant to the issues of motive and intent, the prejudicial effect of the evidence outweighed its probative value on those issues. Nevertheless, the court agreed with the state's contention that the evidence was relevant and admissible as to the issue of identity.
We agree with the trial court that the evidence was admissible. However, we find that the state's assertion that the other crimes evidence was part of the res gestae was correct.
The majority of cases addressing the question of the time interval between the offense and the act alleged to be a part of the res gestae have dealt with hearsay statements, rather than acts or events. Naturally, the greater the time interval, the less likely the statement could be considered impulsive or spontaneous. See State v. McGuire, 577 So.2d 1120, 1123 (La.App. 1st Cir.), writ denied, 581 So.2d 704 (La.1991). Herein, we are considering a series of criminal acts committed by defendant, not a statement made by him. As a result of the Florida kidnapping, defendant and York were fugitives and desperate for transportation. Mad Dog conveyed as much to P.S. when he told her that he and his friends were in a lot of trouble and needed her car. The instant offense did not occur in a vacuum. Defendant's and York's need to escape led to the commission of this offense and, without this evidence, "the complete story of the crime could not be told." McGuire, 577 So.2d at 1124, quoting State v. Curry, 325 So.2d 598, 602 (La.1976).
For the above reasons, we conclude that defendant's prior criminal acts in Florida were admissible pursuant to Louisiana Code of Evidence article 404 B(1). The preceding criminal acts were an integral part of the subsequent events leading to P.S.'s kidnapping. Furthermore, we conclude that, although evidence of the prior crimes in Florida was somewhat prejudicial to defendant, the evidence was far more probative than prejudicial.[3]

SUFFICIENCY OF EVIDENCE
Defendant argues that the trial court erred in denying his motion for new trial. In support of this contention, he reiterates arguments regarding the alleged untimeliness of this prosecution and the introduction of other crimes evidence. He argues that the cumulative effect of these errors requires the granting of a new trial.
We have previously reviewed defendant's arguments regarding the timeliness of the prosecution, finding them to be without merit. Likewise, we concluded his arguments regarding the introduction of other crimes evidence also lack merit. Thus, there is no cumulative prejudicial impact, nor is there a denial of due process. See State v. Smith, 95-1826, p. 20 (La.App. 1st Cir. 9/27/96), 681 So.2d 980, 994, writ denied, 96-2568 (La. 3/27/97), 692 So.2d 390.
Defendant further argues that a new trial should have been granted because the evidence is insufficient to support his conviction. Specifically, he claims that Mad Dog acted on his own in kidnapping the victim, and that no evidence was presented that defendant either knew of Mad Dog's intention or willingly participated in the kidnapping.
Initially, we note that, in order to challenge this conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for post-verdict judgment of acquittal, which he failed to do. See La.Code Crim.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of *1140 error. State v. Dugas, 96-1006, p. 7 (La. App. 1st Cir. 2/14/97), 691 So.2d 197, 201.
The standard for reviewing claims challenging the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis in original). See also La.Code Crim.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). La.R.S. 14:44 defines the crime of aggravated kidnapping as follows:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
When the state relies upon the "forcible seizing" provision of the aggravated kidnapping statute, the state is required to prove the following essential elements:
1. the forcible seizing and;
2. the carrying of any person from one place to another;
3. with the intent to force the victim, or some other person, to give up anything of apparent present or prospective value;
4. in order to secure the release of that person.
State v. Roblow, 623 So.2d 51, 57-58 (La. App. 1st Cir.1993).
In this case, the state's evidence was sufficient to establish each of these essential elements, even assuming arguendo that defendant neither knew of Mad Dog's intention to kidnap P.S. nor participated in her initial abduction. The evidence was overwhelming that, once Mad Dog returned and picked up his friends, defendant actively participated in forcibly transporting the victim to a remote location against her will with the intention of raping her. P.S. testified that she got out of the car when Mad Dog stopped to pick up his friends, and tried to persuade the men to take the car, but leave her. Defendant specifically refused, indicating he wanted to have sexual relations with her. He then physically pushed her into the car and began fondling her, threatening to kill her if she resisted. Defendant directed the car's driver where to exit the interstate and which road to drive down. From these circumstances it is clear that, even if Mad Dog acted alone initially, defendant thereafter willingly and actively participated in the ongoing kidnapping of the victim and theft of her car and belongings.
P.S. testified that, immediately before raping her, defendant told her, "If you just do everything we say, we will let you live." Nathaniel York corroborated this testimony. P.S. further indicated she did not fight defendant during the sexual attack because she was afraid of being knocked unconscious, and because she was hoping to be released if she cooperated. Defendant had already threatened to kill her if she did not cooperate. Given these circumstances, we find the clear implication of defendant's behavior was that the victim would be released safely only if she submitted to all of his demands.
After reviewing the evidence in the light most favorable to the prosecution, we believe any rational trier of fact could have found the essential elements of the crime of aggravated kidnapping were proven beyond a reasonable doubt.

Patent Error
This court routinely reviews criminal appeals for patent error. Our review has revealed the existence of a patent sentencing error in this case. Defendant filed a motion for new trial, which was denied by the trial court. The trial court erred by immediately sentencing defendant without waiting twenty-four hours after the denial of the motion, as required by La.Code Crim.P. art. 873. The record reflects no waiver of this time period by defendant. Nevertheless, in State v. Augustine, 555 So.2d 1331, 1333-1334 (La. *1141 1990), the Louisiana Supreme Court indicated that a failure to observe the twenty-four hour delay provided in article 873 will be considered harmless error where the defendant could not show that he suffered prejudice from the violation. See State v. White, 404 So.2d 1202, 1204-05 (La.1981). In Augustine, the Supreme Court concluded that prejudice would not be found if the defendant had not challenged the sentence imposed and the violation of the twenty-four hour delay was merely noted on patent error review. Augustine, 555 So.2d at 1334. In the instant case, defendant has not assigned error to the trial court's failure to observe the twenty-four hour delay, nor has he contested the sentence imposed. Under these circumstances, this patent sentencing error is harmless. Furthermore, the trial court lacked sentencing discretion in this case. Defendant received a mandatory sentence of life imprisonment at hard labor. See La.R.S. 14:44. Accordingly, any error in the trial court's failure to observe the twenty-four hour delay is harmless beyond a reasonable doubt and does not require a remand for resentencing. See State v. Seals, 95-0305, p. 17 (La. 11/25/96), 684 So.2d 368, 380, cert. denied, ___ U.S. ___, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
We further note another patent error in that the sentence imposed was illegally lenient. The trial court did not impose the life sentence without benefit of probation, parole or suspension of sentence, as required by La.R.S. 14:44. However, since the state did not appeal the sentence imposed, this Court cannot correct such an illegally lenient sentence on appeal. See State v. Fraser, 484 So.2d 122, 125 (La.1986).

CONVICTION AND SENTENCE AFFIRMED.
GUIDRY, J., concurs and assigns reasons.
GUIDRY, J., concurring.
The majority holds that the defendant's prior criminal acts in Florida were admissible pursuant to Louisiana Code of Evidence article 404B(1). I disagree. The Florida acts were not an integral part of the subsequent events leading to P.S.'s kidnapping. The criminal acts occurred six days prior to P.S.'s kidnapping. The trial court was correct in rejecting res gestae as a ground for introduction of the other crimes evidence based on the amount of time which elapsed between the prior crimes and the charged offenses. However, viewing the record in its entirety, I cannot say that the trial court erred in admitting the evidence on the issue of identity. In any event, the evidence of the defendant's guilt is so overwhelming without this evidence, that defendant's rights were not substantially prejudiced by the introduction of the other crimes evidence. Any prejudicial effects of the other crimes evidence did not outweigh its probative value. Defendant was notified of the intent to introduce the evidence. The trier of fact could easily conclude from the overwhelming evidence in the record, without the other crimes evidence, that the defendant was guilty of the charged offense beyond a reasonable doubt.
I respectfully concur.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge for pro tempore by the appointment of the Louisiana Supreme Court.
[2] In order to protect the victim's privacy, she is referred to throughout this opinion either by the initials "P.S." or as "the victim."
[3] Because we uphold admissibility on the ground of res gestae, we pretermit a discussion of the other bases asserted by the state of identity, motive, and intent.