|2LeBLANC, Judge.
The defendant, Willard B. Dugas, III, was charged by bill of information with illegal possession of stolen things valued at five hundred dollars or more, in violation of La. R.S. 14:69. He pled not guilty and, after trial by jury, was found guilty as charged. The imposition of the defendant’s sentence was deferred; and he was placed on active supervised probation for five years with a number of special conditions. The defendant has appealed, urging two assignments of error.
FACTS
On or about October 25, 1993, Richard Fletcher went to the defendant’s home in East Baton Rouge Parish with a bicycle, a string trimmer, and a leaf blower he had stolen from Edward Sutherland’s utility room. Fletcher asked the defendant to take him to sell the items. Fletcher admitted that he had a drug problem and wanted the money to buy cocaine. According to Fletcher, the defendant drove him to an area “off of Choctaw” where Fletcher sold the trimmer and blower to a friend for thirty dollars. The defendant later drove Fletcher to a Circle K convenience store on Greenwell Street.
Roger Corcoran, a detective with the East Baton Rouge Parish Sheriffs Department, was dispatched to the Circle K store to investigate a report of two white males trying to sell a bicycle for $10.00. When Corcoran arrived at the store at approximately 3:55 a.m., he observed a bicycle parked near an automobile, a black male looking at the bicycle, and the defendant and Fletcher standing in the area. Corcoran approached the men and asked who owned the bicycle. According to Corcoran, the men initially claimed they did not know to whom the bicycle belonged, but Fletcher subsequently stated that the bicycle belonged to him. Corcoran checked the bicycle’s registration and learned the bicycle belonged to Sutherland and that it had *199 been stolen. The ^defendant and Fletcher were arrested. After being advised of his rights, the defendant gave a statement to the police wherein he admitted taking Fletcher to sell the items. However, the defendant contended that he did not know that the items were stolen.
ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the defendant contends that the trial court erred in overruling his objection, under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), thus forcing him to submit to a discriminatorily chosen jury. In his brief to this court, the defendant argues that the court misapplied the applicable law when it stated that the defendant had to show a systematic exclusion of a cognizable racial group in order to meet the threshold burden of Batson. He contends that he was not required to show that all jurors were being excluded on the basis of race; he only had to show that the proponent of the challenges was exercising them in a discriminatory manner.
A peremptory challenge by the state may not be based solely upon the race of the juror. See La.C.Cr.P. art. 795(C). In Bat-son, the supreme court adopted a three-step analysis to determine whether or not the constitutional rights of prospective jurors have been infringed by impermissible discriminatory practices:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race.[1] Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. (citations omitted)
Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).
A successful Batson argument requires the defendant to make a prima facie case of race-based exclusion, i.e., that the pertinent circumstances raise an inference that the prosecutor used peremptory challenges to exclude venire members of a cognizable racial group solely on the basis of race. State v. Collier, 553 So.2d 815, 818 (La.1989). The trial court should determine whether the defendant has established the requisite prima facie case of discriminatory selection. State v. Collier, 553 So.2d at 819.
For a Batson challenge to succeed, it is not enough that a racially discriminatory result be evidenced; rather, the result “must ultimately be traced to a racially discriminatory purpose.” Batson v. Kentucky, 476 U.S. at 93, 106 S.Ct. at 1721 (quoting Washington v. Davis, 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976)). Thus, the sole focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. State v. Green, 94-0887, p. 23-24 (La.5/22/95), 655 So.2d 272, 287.
The first step in this process places a burden of production or of “going forward” on the defendant. If the defendant is unable to make out a prima facie case of racial discrimination, then the Batson challenge fails and it is not necessary for the prosecutor to articulate race-neutral explanations for his strikes. The defendant may offer any facts relevant to the question of the prosecutor’s discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of .the prosecutor which support an inference that the exercise of peremptory strikes was motivated Lby impermissible considerations, the composition of the venire and of the jury finally impaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. State v. Green, 94-0887 at p. 24, 655 So.2d at 287-88. Disparate impact on a suspect class, while deserving of some weight in the determina *200 tion of whether purposeful discrimination exists, is not a dispositive fact, since “[a]n argument relating to the impact of a classification does not alone show its purpose.” Hernandez v. New York, 500 U.S. at 362, 111 S.Ct. at 1867.
Herein, the defendant entered a Bat-son objection at the conclusion of the voir dire of the first panel of twelve prospective jurors. From this panel, three individuals were chosen to serve on the jury. The objection was directed at the state’s use of peremptory challenges to exclude Laderick June, Michael Alexander, and James Randolph.
The Batson challenge was prompted by the state’s peremptory exclusion of Alexander and Randolph. When making the challenge, defense counsel also included in his objection the state’s peremptory challenge of June. The court stated that the defendant would have to make a showing of “systematic exclusion of blacks” by the prosecutor. The court noted that only two jurors were seated at that point and did not feel that the defendant had met his burden. Defense counsel argued that the prosecutor exercised four peremptory challenges, three of which were against prospective black jurors. The court stated that they still had “a ways to go in this jury selection process.” The court did not feel that they had reached the threshold of what was required in Batson, “that you make a prime (sic) facie showing of a systematic exclusion of blacks.” The court stated that they had four more jurors to seat and told the defendant |6that he may “get there, but [he was] not there yet.” Defense counsel again argued that three of the state’s four peremptory challenges were against prospective black jurors and asked, “How systematic can you be?” The court responded that it did not know but that it did not “feel [they were] there yet.” The court then overruled the defendant’s objection.
Although the trial court did not properly articulate the standard set forth in Batson, it does appear that the court felt that the defendant failed to meet its burden of establishing the requisite prima facie case of racial discrimination by the prosecutor. Thus, the court did not require the state to give race-neutral reasons for the challenges, which is the second step of Batson. The defendant did not object to the standard articulated by the trial court, nor did the defendant request that the prosecutor set forth race-neutral reasons for the challenges.
The only reason set forth by the defense to support its charge of racial discrimination by the prosecutor in selecting the jury was that three out of the four peremptory challenges by the state were against black prospective jurors. The defendant did not offer any other facts to meet its burden of establishing a purposeful case of racial discrimination. See State v. Green, 94-0887 at p. 24, 655 So.2d at 288. Upon reviewing the voir dire transcript, we are unable to find any statements or actions by the prosecutor which support an inference that the exercise of the peremptory strikes was motivated by impermissible considerations. The prosecutor used four peremptory challenges, one of which was against a prospective white juror. The prosecutor did not attempt to exercise a peremptory challenge against the black alternate juror who eventually was seated.
Uln our view, the defendant clearly failed to meet his burden of production under step one of Batson. Additionally, we do not find anything in this record otherwise to show purposeful discrimination by the prosecutor. Thus, we are unable to find that the trial court abused its discretion in overruling the defendant’s Batson objection. Moreover, had discrimination been its purpose, the state had a peremptory challenge available which it could have used to exclude the black alternate juror. See State v. Brown, 522 So.2d 1110, 1115 (La.App. 1st Cir.1988), writ denied, 548 So.2d 1222 (1989). This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO
The defendant contends in his second assignment of error that the state presented insufficient evidence to support his conviction of possession of stolen things valued in excess of five hundred dollars. In his brief to this court, the defendant contends that the state failed to adequately prove the value of *201 the stolen items as the only evidence presented was the victim’s testimony concerning the value of the items when purchased and the value of similar new items. There was no evidence presented as to the value of the items at the time of the offense. The defendant does not contest the sufficiency of the evidence on any other grounds.
Initially, we note that, in order to challenge this conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See La. C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which,has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (1987).
IgThe standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La. C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (1990). This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder’s determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (1989).
The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 472 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (1989).
La. R.S. 14:69(A) defines illegal possession of stolen things as:
the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
La. R.S. 14:69(B)(1) sets forth the punishment for illegal possession of stolen items “when the value of the things is five hundred dollars or more.” The state must present evidence of the value of the stolen items at the time of the theft. State v. Hoskin, 605 So.2d 650, 652 (La.App. 4th Cir.1992).
The victim, Edward Sutherland, testified that three items, a bicycle, a string trimmer, and a leaf blower, were taken from his 1¡¡utility room without his permission. According to Sutherland, he purchased the bicycle on June 13, 1992, thus making it just over a year old when it was stolen. He described the bicycle as being a “Murray, fifteen speed, twenty-four inch.” The purchase price was approximately $179.99. Sutherland bought the string trimmer and leaf blower in May or June 1993 from Maison Blanche. He paid approximately $175.00 for the string trimmer and between $240.00 to $250.00 for the leaf blower. Sutherland went to Maison Blanche to investigate the prices of the items and found that the trimmer model he purchased was no longer available, but the replacement model cost $199.00. However, a different Maison Blanche store had one model like his and it was on sale at the “close out” price of $159.00. Maison Blanche no longer carried his model of leaf blower but its replacement model was priced at $245.00. Sutherland asked a worker at Maison Blanche about the value of the blower and was informed that $240.00 or $245.00 is what the item would cost. Sutherland testified that the blower and the trimmer had not been used at all and were “virtually, new.” The bicycle belonged to Sutherland’s son. Sutherland stated that his son took care of his “stuff very well” and although the bicycle had probably decreased in value he was sure it would sell for more than $100.00.
Roger Corcoran of the East Baton Rouge Parish Sheriffs Department investigated the instant crime. He observed the stolen items when they were recovered and testified that they were “like brand new.”
*202 The instant incident occurred in October 1993 and Sutherland purchased the blower and the trimmer in May or June 1993. The bicycle was over one year old as it was purchased in June 1992. The owner of the property testified at trial as to the estimated value of the items, which totaled at least $500.00. The victim contended that the items were in good condition and almost new. The “like ... new” condition of the items was corroborated by 1 ^Corcoran. The defense offered no evidence contradicting the value of the stolen items. We find that the jury reasonably could have concluded that the stolen items were valued at $500.00 or more at the time of the offense. See State v. Hoskin, 605 So.2d at 652; See also State v. Bell, 544 So.2d 32, 34 (La.App. 4th Cir.1989).
The defendant contends that under State v. Peoples, 383 So.2d 1006 (La.1980), evidence of the original price of the stolen items and the replacement costs of the similar new equipment does not prove value of the items. In Peoples, the court found that evidence of the original price of the stolen items (which were two to seven years old at the time of the offense) and the replacement cost of similar new equipment did not prove that the items had a value of more than $500.00 at the time of the offense, especially in view of contrary expert testimony presented by the defendant. However, the items at issue herein were relatively new and in good condition when stolen. Thus, the present case is easily distinguishable from Peoples.
The guilty verdict returned in this case indicates that, after considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the state witnesses regarding the value of the stolen items. This court will not assess the credibility of the witnesses or reweigh the evidence.
After reviewing the record, we find that the evidence supports the jury’s determination. We are convinced that a rational trier of fact, viewing all the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the state proved beyond a reasonable doubt the elements of illegal possession of stolen things valued at five hundred dollars or more. This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.

. The scope of a Batson claim has been extended to other suspect classifications, such as gender. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 140, f