McCLENDON, J.
| ¡^Defendant, Joseph S. McKinney, was charged by bill of information with molestation of a juvenile, a violation of LSA-R,S. 14:81.2. He entered a plea of not guilty. Following a jury trial, defendant was found guilty as charged.[1] He subsequently filed a motion for new trial, which the trial court denied. Thereafter, the trial court sentenced defendant to thirty-five years at hard labor. Defendant now appeals, alleging two counseled assignments of error. He has also filed a pro se brief containing one cognizable assignment of error. [1] For the following reasons, we affirm defendant’s conviction, but vacate his sentence and remand for resentencing.
■ .FACTS
The victim, C.M.,[2] is defendant’s biological daughter, and her date of birth is April 1,1997. C.M. and her younger sister lived with defendant in Indiana following the death of 'their mother in September of 2003.
When C.M. was twelve, she and her sister moved with defendant, to Louisiana. On April 23, 2011, C.M. and. her sister were placed into foster care because C.M. reported having been physically abused by defendant. After approximately one year in foster care, C.M. reported to her foster *702 mother that defendant had also sexually-abused her since she was six years old.
According to C.M., defendant began to perform oral sex on her when she was six years old. As the abuse progressed, defendant forced C.M. to perform oral sex on him, and he would also instruct her to cross her legs so that he could use the friction of her thighs to stimulate his penis until he ejaculated. While defendant briefly ceased these acts upon arriving in Louisiana, they resumed when the family moved into a residence in St. Amant. One day, after C.M. turned thirteen, defendant instructed her to come to his bedroom, where he vaginally |sraped her. Defendant continued to vaginally rape C.M. several times per week until she was removed from the home. Following a jury trial, defendant was found guilty of molestation of a juvenile.
SUFFICIENCY OF EVIDENCE
In his second assignment of error (addressed first), defendant contends that the trial court erred in denying his motion for new trial, based on a claim of insufficient evidence, because there was no physical evidence to corroborate C.M.’s testimony.[3]
A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const, amend. XIV; LSA-Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after- viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821 B; State v. Ordodi, 06-0207 (La.11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard of review, incorporated in Article 821B, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 01-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts | ¿reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157, and 00-0895 (La.11/17/00), 773 So.2d 732.
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is *703 an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile’s age is not a defense. LSA-R.S. 14:81.2 A(l). The Louisiana Supreme Court has defined “lewd and lascivious conduct” very broadly as any conduct which is “lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to the sexual impurity or incontinence carried on in a wanton manner.” See State v. Jones, 10-0762 (La.9/7/11), 74 So.3d 197, 204.
Thus, in order to commit molestation of a juvenile; the offender must possess the specific intent of arousing or gratifying the sexual desires of himself or the child upon whose person he committed a lewd or lascivious act or in whose presence he committed such an act. However, specific intent need not be proven as a fact. It may be inferred, from the circumstances of the transaction and the actions of the defendant. State v. Babin, 93-1361 (La. App. 1 Cir. 5/20/94), 637 So.2d 814, 817-18, writ denied, 94-1563 (La.10/28/94), 644 So.2d 649, abrogated on other grounds, State ex rel. Olivieri v. State, 00-0172 (La.2/21/01), 779 So.2d 735, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 . and 534 U.S. 892, 122 S.Ct. 208, 151 L.Ed.2d 148 (2001). Specific criminal intent' is that state of mind which exists when-the'circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or | fifailure to act. LSA-R.S. 14:10(1). Specific intent is an ultimate legal conclusion to be resolved by the fact finder. State v. Lavy, 13-1025 (LaApp. 1 Cir. 3/11/14), 142 So.3d 1000, 1005, writ denied, 14-0644 (La.10/31/14), 152 So.3d 150.
C.M. testified at trial regarding the acts committed against her by defendant. She first detailed , the repeated physical abuse inflicted upon her by defendant, including biting, punching, and hitting her with objects. C.M. then described that the molestation began at six years old (prior to her moving to Louisiana), when-defendant first performed oral sex on her in his bedroom. Over time, defendant also forced her to perform oral sex on him, used “sex toys” on her vaginal area, and stimulated himself to orgasm using the friction of her legs. C.M. stated that this abuse would occur multiple times per week. This activity briefly ceased upon the family’s move to Louisiana, when they lived with one of defendant’s friends. However, the abuse resumed when the family moved into their own residence in St. Amant, when the victim was still twelve years old. C.M. testified that defendant treated her as a mother and a wife, and she was forced on occasion to perform sexual acts in exchange for being allowed to spend time with her friends.
C.M. testified that one day, after, she turned thirteen, defendant instructed her to come to his bedroom to do “laundry.” C.M. explained that “laundry” was defendant’s “code word” for when he wanted sexual activity,. On this particular occasion, defendant vaginally raped C.M. until he ejaculated. C.M. testified that defendant continued to vaginally rape her multiple times per week for the next year until she left the home..
C.M. stated at trial that she delayed reporting defendant’s'sexual abuse both because she.was scared of defendant and because she-wanted to protect defendant and her younger sister; She testified that after about one year in- foster care, she came to a realization that she wanted to *704 change her life, causing her to disclose the sexual abuse to her foster mother.
J.M., C.M.’s younger sister, also testified at’ trial. She stated that defendant also physically abused her, including one instance where he threw her against a I ^shower door when she intervened during his physical' abuse of C.M. J.M. further testified that defendant physically abused C.M.' much 'worse - than he abused her. J.M. described that defendant acted somewhat inappropriately toward C.M. by slapping her rear and calling her “baby.” Finally, J.M." testified that defendant would follow C.M. into his bedroom and lock the door to do “laundry.” On some of these . occasions, J.M; noticed that the actual laundry had already been folded.-
Anne Troy, a pediatric forensic nurse practitioner at the Audrey Hepburn Care Center in New Orleans, testified as an expert in the'field of child maltreatment. She spoke with and examined' C.M. bn June 22, 2012, slightly over one year after C.M. had been placed into foster care. Ms. Troy testified that C.M. gave a clear, detailed, and spontaneous narrative description of the sexual abuse. A physical exam revealed-that C.M. had bacterial va-ginosis, a condition associated with sexual contact. However, Ms. Troy characterized this physical finding as “indeterminate” because it, taken alone, neither confirmed nor denied C.M.’s allegations of sexual abuse. -Finally, Ms; Troy also described the concepts of delayed disclosure-of sexual abuse and persistence of attachment to explain why C.M. might have waited so long to make her allegations against defendant.
Defendant testified on his own behalf-at trial. He admitted to only two instances of “spanking” C.M, with a belt, the second of. which -led to' C.M.’s removal -from the house and defendant’s prior conviction for cruelty to juveniles. Defendant explained to the jury that these spanking incidents were motivated by his attempts to discipline C.M. for associating with older boys. However, defendant categorically denied beating C.M. repeatedly, beginning when she was six years old. He also unequivocally denied ever touching C.M. in an inappropriate way or having vaginal intercourse with her. When asked to explain why C.M. would make the allegations of sexual abuse, defendant stated that he believed C.M. was acting out of spite.
On appeal, defendant contends that it was unreasonable for the jury to believe C.M.’s testimony because' of a lack of corroborating evidence! ' In short, defendant’s argument raises an issue of C.M.’s credibility. The jury heard all of |7the testimony and chose to believe the victim’s account. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by-the trier of. fact, is sufficient to support a factual conclusion. State v. Higgins, 03-1980. (La.4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2006).
Defendant argues that it was unreason■able for the jury to accept C.M.’s testimony as a whole because of the conflict between her description of over seven years of physical abuse, and a lack of any recognition of the effects of this abuse by anyone else in C.M.’s life (e.g., a teacher or neighbor). However, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness.' Moreover, when there is conflicting testimony about factual matters, the resolution of -which depends upon a- determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to *705 overturn a fact finder’s determination of guilt. See State v. Taylor, 97-2261 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 982. We are constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal-cases. See State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83. The fact that the-record .contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1 Cir.1985).
When a case involves circumstantial, evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant’s own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La.1984). The jury’s verdict reflected the reasonable conclusion that, based on the testimony of C.M., she was sexually abused by defendant. In finding defendant guilty, the jury clearly rejected the defendant’s theory of innocence. See Captville, 448 So.2d at 680. Defendant suggests that there is no physical ^evidence to support C.M.’s claim- of sexual abuse, .but the testimony of the victim alone is sufficient to prove the elements of the offense. See State v. Orgeron, 512 So.2d 467, 469 (La.App. 1 Cir. 1987), writ denied, 519 So.2d 113 (La.1988).
An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the trier of fact. See State v. Calloway, 07-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). The jury heard, and rejected, defendant’s theory of complete innocence. We cannot say that.the jury’s determination was irrational under the facts and circumstances presented to it. See Ordodi, 946 So.2d at 662.
After a thorough review of the record, we find that the evidence supports the jury’s verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond' a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant committed the offense of molestation of a juvenile against C.M. by repeatedly subjecting her to unwanted sexual advances. We also note that the State adequately proved that at least a portion of this offense occurred while the victim was under thirteen years of age. ,
This assignment of error is without merit.
BATSON/J.E.B CHALLENGE
In his remaining counseled assignment of error, defendant alleges that the state improperly exercised peremptory challenges against three prospective male jurors on the basis of gender.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court adopted á three-step analysis to determine whether the constitutional rights of a defendant or prospective jurors have been infringed by impermissible discriminatory practices. First, the defendant must make a prima fade showing that the prosecutor has exercised peremptory challenges on the basis of race; Second, if the requisite showing has been made, the burden shifts to the prosecutor to’ articulate a race-neutral explanation for | astriking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimi *706 nation. State v. Handon, 06-0131 (La. App. 1 Cir. 12/28/06), 962 So.2d 53, 66. The scope of a Batson claim has been extended to other “suspect classifications” such as gender. See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 141-42, 114 S.Ct. 1419, 1428, 128 L.Ed.2d 89 (1994). The same three-step, burden-shifting framework outlined in Batson is utilized regardless of whether the challenge is based on race or gender. State v. Duncan, 99-2615 (La.10/16/01), 802 So.2d 533, 543, cert. denied, 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed.2d 183 (2002).
To establish a prima fade case, the defendant must show: (1) the defendant’s challenge was directed at a member Of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of his being a member of that cognizable group. See Batson, 476 U.S. at 96, 106 S.Ct. at 1723. Without an inference that the prospective jurors were stricken because they are members of the targeted group, the defendant is unable to make a prima fade case of purposeful discrimination and his Batson challenge expires at the threshold. State v. Sparks, 88-0017 (La.5/11/11), 68 So.3d 435, 468, cert. denied sub nom., ElMumit v. Louisiana, — U.S. -, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012).
The trial court may “effectively collapse the first two stages of the Batson procedure, whether or not the defendant established a prima fade case of purposeful discrimination, and may then perform the critical third step of weighing the defendant’s proof and the prosecutor’s race-neutral reasons to determine discriminatory intent.” State v. Jacobs, 99-0991 (La.5/15/01), 803 So.2d 933, 941, cert. denied, 534 U.S. 1087, 122 S.Ct., 826, 151 L.Ed.2d 707 (2002). A trial court may take into account not only whether a pattern of strikes against a suspect class of persons has emerged during voir dire, but also whether the opposing party’s questions and statements during voir dire examination and in exercising |inhis challenges may support or refute an inference of discriminatory purpose. See Duncan, 802 So.2d at 545.
The State, in presenting race and gender-neutral reasons for its excusal of prospective jurors, need not present an explanation that is persuasive, or even plausible; unless a discriminatory' intent is inherent in the State’s explanation after review of the entire record, the reason offered will be deemed race neutral. For a Batson-type challenge to succeed, it is not enough that a discriminatory result be evidenced; rather, that result must ultimately be traced to a prohibited discriminatory purpose. Thus, the sole focus of the Batson-type inquiry is upon the intent of the opposing party at the time he exercised his peremptory strikes. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 287. A reviewing court ■ owes the trial court’s evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Handon, 952 So.2d at 58.
In the instant case, the first panel of prospective jurors contained eleven men and ten women. On this panel, the State peremptorily struck two men, and the defense peremptorily struck four men.[4] Of the six jurors ultimately seated from this panel, five were males.
On the second panel of prospective jurors, the State peremptorily struck all four *707 males whose names were reached before a full jury was seated. Prior to selecting alternate jurors, the defense raised a Bat-son- type objection, arguing that the State had exercised these peremptory challenges on the basis of gender.
The State responded to the defense challenge with gender-neutral reasons for striking each potential male juror, including the two males from the first panel. With respect to JJ.,[5] a member of the first panel, the State noted that the prospective juror’s daughter was molested and that this individual talked a great In deal about forgiveness as it related to his religion. Concerning Gregory Wroten, the other male peremptorily stricken from the first panel, the State gave an explanation that was interrupted by defense counsel, but which appeared to touch upon the individual’s occupation and deeply held beliefs. The State then explained that it struck Jessie Simmons from the second panel because he had no children and because his body language made it difficult for the prosecutor to get a read on him. With respect to David Kibbe, the State explained that this prospective juror was somewhat unresponsive to questioning, making it seem like he was uninterested in sitting as a juror. Finally, with Eddie St. Pierre, the State noted that this prospective juror also seemed unresponsive until near the end of voir dire, when defense counsel was able to get some response from him. However, the State was unsure whether Mr. St. Pierre could even hear what was being said. Defense counsel acquiesced to the State’s explanation for Mr. St. Pierre, but argued that the State failed to give sufficient gender-neutral reasons for its strikes of Messrs. Simmons and Kibbe. The trial judge disagreed and denied defense counsel’s Batson/J.E.B challenge. The State’s strike of D.E.[6] was not initially addressed, but the State later stated its gender-neutral reason for striking D.E. was his disclosure that his wife had been molested. The trial court noted and accepted this reason.
Our review of the State’s explanations for the peremptory challenges against the prospective jurors • reflect gender-neutral justifications. The explanations were reasonable, and the proffered rationale had some basis in accepted trial strategy. See Handon, 952 So.2d at 59. Other than reliance upon the number of males who were peremptorily struck, defense counsel offered no facts or circumstances supporting an inference that the State exercised its strikes in a discriminatory manner. A defendant’s reliance on bare statistics to support a prima facie case of gender discrimination is misplaced. See Duncan, 802 So.2d at 550. Thus, defendant’s proof, when weighed against the State’s offered gender-^neutral reasons, was not sufficient to prove the existence of discriminatory intent. See Green, 655 So.2d at 290. Moreover, a review of the entire voir dire transcript fails to reveal any evidence that the use of peremptory strikes by the prosecutor was motivated by impermissible considerations. See Handon, 952 So.2d at 59. Accordingly, we find no abuse of discretion by the trial court in its denial of defendant’s gender challenge regarding the prospective jurors.
This assignment of error is without merit.
PRO SE BRIEF
Defendant filed a supplemental pro se brief with this court. Although *708 titled as such, the “brief’ is largely styled as a correspondence to the court, throughout which defendant refers to numerous allegations of fact not present in the trial record. The sole discernible claim for relief present in this filing is a claim of ineffective assistance of' counsel. Defendant contends that his trial attorney failed to properly investigate his case, to pursue certain types of evidence, and to subpoena certain witnesses to testify on his behalf.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the trial court, where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Carter, 96-0337 (La.App. 1 Cir. 11/8/96), 684 So.2d 432, 438. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).
Because defendant’s claims raise issues related to his counsel’s investigation, preparation, and strategy, these claims cannot be reviewed on appeal. ■ Only in an eviden-tiary hearing in the district court, where the defendant could present evidence beyond what is contained in the instant record, could these allegations be sufficiently investigated.[7] Accordingly, these allegations are not | ^subject to appellate review. See State v. Albert, 96-1991 (La.App. 1 Cir. 6/20/97), 697 So.2d 1355, 1363-64. See also State v. Johnson, 06-1235 (La.App. 1 Cir. 12/28/06), 951 So.2d 294, 304.
Defendant’s pro se assignment of error is unreviewable on appeal.
PATENT ERROR
For errors not assigned, we are limited in our review under LSA-C.Cr.P. art. 920(2) to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. See State v. Price, 05-2514 (La.App. 1 Cir. 12/28/06), 952 So.2d 112, 123 (en banc), writ denied, 07-0130 (La.2/22/08), 976 So.2d 1277. After careful review, we have found an error in defendant’s sentence.
Defendant was convicted of molestation of a juvenile, with the specific jury findings that at least a portion of the offense occurred when the victim was younger-than thirteen years of age. Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence. LSA-R.S. 14:81.2 E(l) (prior to amendment by 2011 La. Acts No. 67, § 1). Thus, defendant’s sentence of thirty-five years at hard labor is illegally lenient because it fails to restrict the possibility of parole in accordance with the terms of the statute.
Pursuant to LSA-R.S. 15:301.1 A, if a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of parole, probation, or suspension of sentence, each sentence which is imposed under the proyisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of parole, probation, or suspension of sentence. However, LSA-R.S. 15:301.1 A cannot apply where the district court *709 must exercise discretion concernmg any portion of the sentence that is to, be served without benefit of parole, probation, or suspension of sentence. See State v. Dorsey, 12-1816 (La.App. 1 Cir. 2/4/14), 187 So.3d 651, 656, writ denied, 14-0378 (La.9/19/14), 148 So.3d 951, cert. denied, - U.S. -, 135 S.Ct. 1495, 191 L.Ed.2d 435 (2015).
In Dorsey, the defendant had been convicted of aggravated incest[8] and sentenced to the minimum term for that offense twenty-five years. However, this sentence failed to comply with LSA-R.S. 14:78.1 D(2) (prior to repeal), which mandated “at least” twenty-five years of the defendant’s sentence to be served without benefit of parole, probation, or suspension of sentence. See Dorsey, 137 So.3d at 655-56. Recognizing that defendant had been given the minimum-possible term for this offense and that the minimum restriction-of-benefits period coincided with this minimum term, this Court concluded that no discretion would be involved in correcting Dorsey’s illegally lenient sentence. Therefore, we deemed Dorsey’s sentence to contain the twenty-five year restriction of benefits. See Dorsey, 137 So.3d at 656.
Dorsey is distinguishable from the instant case because defendant was sentenced to a term of imprisonment greater than the minimum for his offense of molestation of a juvenile. If the trial court had recognized that this sentence should have contained at least a twenty-five-year restriction on the benefit of parole, it might have imposed a different sentence. Allowing LSA-R.S. 15:301.1 A to act by operation of law on the illegal sentence in this ease would impinge upon the trial court’s sentencing discretion. Under State v. Haynes, 04-1893 (La.12/10/04), 889 So.2d 224 (per cunam), we vacate defendant s sentence and remand this matter to the trial court for resentencing.
CONCLUSION
For the foregoing reasons, we affirm defendant’s conviction, vacate defendant’s sentence, and remand for resentencing;
CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.

. In unanimously finding defendant, guilty, the jury also determined that the victim was under the age of thirteen for a portion of the time the offense occurred and that the acts took place multiple times over a period of more than one year.

. In accordance with LSA-R.S. 46:1844 W, ■ the victim herein is referred to only by her initials, or as "the victim.”

. We note that, in order to challenge the conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for post-verdict judgment of acquittal rather than a motion for new trial. See LSA-C.Cr.P. arts. 821, 851, and 858. Nevertheless, we will consider a claim of insufficiency of the evidence that has been briefed pursuant to a formal assignment of error. See State v. Dugas, 96-1006 (La.App. 1 Cir. 2/14/97), 691 So.2d 197, 201; State v. Tate, 506 So.2d 546, 551 (La.App. 1 Cir.), writ denied, 511 So.2d 1152 (1987).

. Of the women on this panel, the State peremptorily struck two, and the defense struck six; one woman was jointly excluded for cause.

. We have chosen to use the initials of this prospective juror in order to protect the identity of his daughter.

. We also chose to use the initials of this prospective juror to protect the identity of his wife.

. Defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924, et seq., in order to receive such a hearing.

. While the titled crime of aggravated incest has been repealed, the same conduct prohibit- . ed by this offense is now incorporated into the crime of aggravated crime against nature. See 2014 La. Acts No. 177, §§ 1 & 2.