HIGGINBOTHAM, J.'
^Defendant, Bryan Anthony Golden, was charged on two counts by bill of information with armed robbery involving the use of a firearm, violations of La. R.S. 14:64 (count one) and 14:64.3 (count two).[1] He pled not guilty. Defendant waived, his right to a jury trial, and this matter was tried as a bench trial. Defendant was found guilty as charged. Defendant filed a motion for new trial, which the trial court denied. Thereafter, the trial court sentenced defendant on the armed robbery conviction (count one) to fifteen years at hard labor, without the benefit of parole, probation, or suspension of sentence. For the use of a firearm during the armed robbery (count two), the trial court imposed an additional five years at hard labor, without the benefit of parole, probation, or suspension of sentence. The sentences imposed were ordered to be served consecutively.[2] Defendant now appeals, alleging two assignments of error.
FACTS
Around 12:30 p.m. on February 19, 2014, a subject wearing a motorcycle helmet and brandishing a handgun entered the Red *7 River Bank on La. Hwy. 73 in Geismar. The individual, who tellers could identify only as a black male, jumped the teller line counter and began to pull cash from the bank’s drawers. Because the bank had recently received a cash delivery, the subject eventually fled with almost fifty thousand dollars. Witnesses outside the bank described seeing a gold, four-j ¡floor vehicle fleeing the área at a high rate of speed. One of the witnesses described seeing a helmeted person sitting inside the passenger’s side of the vehicle.
Following the robbery, another witness observed an abandoned vehicle on Coco Road and informed the police about the car. Lieutenant Aaron Hooper, from Hunt Correctional Center, assisted the Ascension Parish Sheriffs Office by utilizing one of his tracking dogs in the area of the abandoned vehicle, a stolen gold Chevrolet Malibu. Lieutenant Hooper’s dog established a track which led to a trailer located at 36695 River Oaks Road, where an individual named Travis West lived. Lieutenant Hooper and his dog then backtracked to the vehicle. In traversing through the woods, Lieutenant Hooper located sweatpants, a t-shirt, and a pair of shoes neatly stacked along the trail. A subsequent search of the vehicle revealed a cardboard money divider used by one of the bank’s tellers.
In their investigation, the police spoke with West several times. As a result of these interviews, the police developed as suspects Emerson and defendant. Emerson is West’s cousin, and subsequent DNA testing could not exclude him as a contributor to a profile discovered on some of the clothing recovered from the woods. West later pled guilty to accessory after the fact to- armed robbery, and Emerson and defendant were tried together in the instant matter.
SUFFICIENCY OF THE EVIDENCE
In his first assignment of error, defendant contends that the evidence presented at trial was insufficient to support his convictions. In particular, he argues that the state’s evidence regarding his identity as the perpetrator who entered the bank was purely circumstantial and failed to exclude every reasonable hypothesis of innocence,[3] ■
14A conviction based on insufficient' evidence cannot stand, as it violates due process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B); State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821(B), is an objective standard for testing the overall evidence, ..both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact find *8 er must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, and 2000-0895 (La. 11/17/00), 773 So.2d 732.
Defendant does not dispute that an armed robbery took place at the Red River Bank on February 19, 2014. Rather, he argues that the state failed to prove his identity as the perpetrator. When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. Positive identification by Lonly one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibilities of the witnesses, and this Court will generally not second-guess those determinations. State v. Hughes, 2005-0992 (La. 11/29/06), 943 So.2d 1047, 1051; State v. Davis, 2001-3033 (La.App. 1 Cir. 6/21/02), 822 So.2d 161, 163-64.
None of the tellers who witnessed the robbery or external witnesses who witnessed the flight could identify any of the perpetrators. Further, the only significant DNA evidence introduced at trial linked co-defendant Emerson to some of the clothing recovered along the scent trail from the gold Chevrolet Malibu to West’s trailer. Neither the weapon nor the motorcycle helmet used by the perpetrator were ever recovered.
Defendant turned himself in to the police on February 21, 2014. After being Mirandized, he gave an unrecorded statement. In the statement, defendant described that he was napping during the time of the robbery. Defendant said that when he woke up around 2:00 or 3:00 p.m., he had a friend bring him to Gonzales Motors, where he bought a blue Mercury Sable for $3,300 in cash. He then went to Best Buy in. Baton Rouge, where he spent another $1,000 in cash. Defendant told the detectives that he then partied because his birthday was the week before. Defendant explained that he had gotten some money from an insurance settlement in the fall of 2013 and another $1,000 for driving trucks. Defendant advised that he had a bank account with United Community Bank (UCB).
The state called a UCB employee to testify at trial. The employee assisted in reviewing defendant’s bank records. According to the employee, defendant made a $10,000 deposit on November 18, 2013, but his balance was just under $600 on December 31, 2013. In addition, defendant made a $1,000 cash deposit after 4:00 p.m. on the •date of the armed robbery. The UCB employee recalled defendant’s deposit on this day and testified that the bills deposited were new $100 bills that stuck together. A .manager at Gonzales Motors also testified at trial regarding | defendant’s purchase of the Mercury Sable. The manager described that defendant paid in cash with new $ 100 bills that stuck together.
At the time of the robbery, defendant lived at Twin Lakes Mobile Home Park. *9 The park’s office manager testified at trial that defendant routinely had trouble paying his rent on time from the time he began living there in March or April of 2013.
Detective Brad Gomez of the Ascension Parish Sheriffs Office was the lead investigator in the armed robbery. He participated in executing a search warrant of defendant’s trailer. During a search of the trailer, the police recovered numerous items with defendant’s name on them. Also recovered from defendant’s trailer were three Best Buy receipts from the evening of February 19, 2014, totaling approximately $1,000 in cash expenditures. The search also revealed an empty motorcycle helmet bag, as well as a large, zippered black bag.
West testified at trial. He described that on the day of the incident, he was riding around the area of his home with friends when he saw his cousin, co-defendant Emerson, walking on La. Hwy. 73. West described that he picked up Emerson and began to drive him in the direction of Emerson Road when he noticed defendant walking out of the woods carrying a large bag or shirt. According to West, defendant got into the car and said to Emerson that he thought he had left DNA behind. West stated that he drove defendant and Emerson to Emerson Road, where he let them out of the vehicle. West admitted to pleading guilty to accessory after the fact, though he stated he did so on the advice of counsel.
On March 11, 2014, Marcus Sterling wrote a letter addressed to Ascension Parish Sheriff Jeff Wiley. Sterling was being jailed with defendant and indicated in the letter that defendant had told him some of the details of the bank robbery. Detective Gomez received the letter as part of his investigation and found it to contain details of the offense that were not released in a Crime Stoppers bulletin. Among these details were: the “black teller” had fallen during the robbery, the | .¿fleeing subject dropped some money outside the bank, the subject wore a mask under his helmet, a different teller helped the suspect retrieve the money, guns found in defendant’s home did not include the gun used in the robbery, the suspect received a ride from West in a gold car (West owned a gold Nissan Altima), the tellers were two white women and a black woman, and defendant purchased a new cell phone after the robbery. Sterling later met with Detective Gomez and made a statement concerning his knowledge reflected in the letter.
Sterling also testified at trial and reiterated some of the details included in the letter; he claimed not to remember other details. Sterling indicated that defendant told him he stole over $40,000, splitting half with co-defendant Emerson. Defendant told Sterling that he gave his money to “his baby mamma,” and Emerson buried his share. A search of defendant’s girlfriend’s residence, conducted three months after the robbery, did not reveal any evidence. Defendant did not testify at trial. To impugn Sterling’s credibility, defendant called Sterling’s ex-girlfriend, who stated that Sterling was not truthful and would make up stories to get out of jail. Co-defendant Emerson called two witnesses who presented alibi evidence on his behalf.
Following the presentation of evidence, the trial court orally set forth the reasons for its verdict. The trial court first noted that defendant shared some of the physical characteristics of the suspect who went inside the bank, presumably his skin color and height. The trial court noted that a helmet bag was found in defendant’s home, and defendant spent over $4,000 on the day of the robbery and also deposited $1,000 in new $100 bills. The court highlighted defendant’s statement that he left *10 his DNA and credited West’s testimony-regarding witnessing defendant carry. a black sack.
The trial court then turned to the Sterling evidence. While the trial court found Sterling’s credibility to leave “a lot to be desired,” it noted the ability to believe some testimony while disbelieving other statements. The trial court found that Sterling’s | «letter to the sheriff contained statements of fact that he otherwise could not have known, and it chose to credit his recitation of those facts.[4]
In his brief, defendant seizes upon a statement by the trial court that the'evidence does not exclude every reasonable hypothesis of innocence. However, a review of the context of this statement indicates it to be a simple misstatement rather than a finding. The trial court stated;
And basically, when we look at all the circumstantial evidence in order to convict, the Court must exclude every reasonable hypothesis of innocence. In this case the circumstantial evidence when taken as a whole does not exclude every reasonable hypothesis of innocence and the Court finds Bryan Golden guilty of armed robbery and that the robbery was committed with a firearm.
(Emphasis added). The trial court clearly recited the proper applicable law and then determined defendant to be guilty as charged, indicating that the emphasized “not” was unintended.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder’s determination of guilt. State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We-are constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83.
Viewed in the light most favorable to the state, the evidence establishes that on February 19, 2014, defendant was in possession of a substantial amount—at least $5,000—of new $100 bills. He possessed and spent this cash despite apparently |shaving no stable job or other source of income. On this date, West saw defendant holding a large black bag, similar to one which was later recovered from defendant’s home. Additionally, a search of defendant’s home led the police to discover a bag for a motorcycle helmet, and the evidence indicates that the suspect in the bank robbery wore a motorcycle helmet. In addition, upon entering West’s vehicle, defendant expressed his concern about leaving behind his DNA. Finally, Sterling informed the police of information that defendant told him- regarding .the robbery, and this information was of the-kind not released by the detectives to the public. The trial court’s ultimate verdicts largely reflect credibility determinations, which are entitled to great deference on appeal.
When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a *11 reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). The trial court’s verdict in this case reflected the reasonable conclusion that defendant was the individual who conducted the robbery of the Red River Bank. In finding defendant guilty, the trial court rejected the theory of defendant’s complete non-involvement. See Id. In accepting a hypothesis of innocence that was not unreasonably rejected by the factfinder, a court of appeal impinges on a factfinder’s discretion beyond the extent necessary to guarantee the fundamental protection of due process of law, See State v. Mire, 2014-2295 (La. 1/27/16), — So.3d -, -, 2016 WL 314814, *4 (per curiam).
After a thorough review of the record, we find that the evidence supports the trial court’s verdict finding defendant guilty of armed robbery involving the use of a firearm. We are convinced that viewing the evidence in the light most favorable to the prosecution, and to the exclusion of every reasonable hypothesis of innocence, any rational trier of fact could have found beyond a reasonable doubt that defendant 11ltwas guilty of these offenses. See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417, 422 (per curiam).
This assignment of error is without merit.
FAILURE TO DISCLOSE BRADY INFORMATION
In his second and final assignment of error, defendant argues that the state failed to disclose information regarding any leniency given to the informant, Sterling, in exchange for his'testimony.
The rule established in Brady v. Maryland is that upon request, the state must produce evidence that is favorable to the accused where it is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). See also State v. Bright, 2002-2793 (La. 5/25/04), 875 So.2d 37, 41. Failure to do so violates a defendant’s due process rights. Bright, 875 So.2d at 41. The Brady rule applies to both exculpatory and impeachment evidence, including evidence that impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); Bright, 876 So.2d at 41; State v. Knapper, 579 So.2d 956, 959 (La. 1991). A Brady violation occurs when the “evidentiary suppression undermines confidence in the outcome of the trial.” State v. Garcia, 2009-1578 (La. 11/16/12), 108 So.3d 1, 37, cert. denied, — U.S. -, 133 S.Ct. 2863, 186 L.Ed.2d 926 (2013) (quoting Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995)).
Defendant argues that he was not informed in a timely manner that the state agreed to nolle-prosse an armed robbery charge pending against Sterling on the date he made his statement to the police, resulting in his release from jail. However, contrary to defendant’s assertion, the record does not establish that the state made a deal with Sterling to obtain his testimony.
On the morning that trial began, defense counsel requested any Brady maternal that had not yet been given. The state responded that the only deal made In was one with West, who had already pled guilty. The state noted that a charge against Sterling had been nolle-prossed but indicated that it was not in exchange for his testimony. At that time, the state informed .defense counsel and the court that Sterling still had an outstanding charge for attempted possession of drugs.
*12 During the trial testimony of Detective Gomez, defense counsel again raised the Brady issue with respect to Sterling’s involvement in the case. While the prosecutor admitted that Sterling’s armed robbery charge was nolle-prossed on May 12, 2014, when he made a statement to the police, the prosecutor indicated that it was not done in exchange for Sterling’s statements or testimony. Rather, the prosecutor explained that similar charges had been nolle-prossed for three of Sterling’s co-defendants in exchange for their pleas to drug offenses. The prosecutor was clear that Sterling was never told that his robbery charge would be dismissed in exchange for his statement or testimony. Because the decision . to nolle-prosse the armed robbery charge led to a bond reduction, Sterling was eventually released from jail on May 20, 2014. In his own testimony, Sterling testified that he received no promises or deals for his statement or testimony. Sterling noted that he still had a pending drug charge, and in the interim since his release, he had served more jail time -as a result of a domestic' abuse charge.
In sum, there is no indication that Sterling’s letter,- statement, or testimony were the result of any deal entered into between him and the state. Therefore, there was nothing for the state to disclose pursuant to defendant’s Brady request. Further, to the extent that the state’s decision to nolle-prosse the armed robbery charge might be considered a “deal,” that information was revealed on the morning of trial, and the issue would become one of late disclosure, not non-disclosure. Defense counsel fully cross-examined Sterling about his “hope” of the outcome of his pending charges, and the trial court was undoubtedly aware of all of the relevant facts concerning Sterling’s involvement in the instant matter. There is no evidence in the record of any prejudice to defendant.
haThis assignment of error is without merit,
CONCLUSION
For the stated reasons, we find no merit to defendant’s assignments of error and, therefore, we affirm the convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.
Theriot, J., dissents with reasons.

. Charged'in the same bill of information was co-defendant Cedric D, Emerson, who' was found not guilty after these proceedings.

. The minute entry from defendant’s sentencing indicates that , these sentences have been enhanced pursuant to La. R.S. 15:529.1, but the state did not file a habitual offender bill of information, and the trial court made, no habitual offender finding at the time of sentencing. This "enhancement” is not reflected in the sentencing transcript and appears to be a simple clerical error that tracks what appear to be standardized written reasons for sentencing filed by the trial court. Where there is a discrepancy between the transcript and the minutes, the transcript must prevail. See State v. Lynch, 441 So.2d 732, 734 (La. 1983), The trial court mentioned at the sentencing that defendant was classified as a "first felony offender.” Therefore, there is no habitual offender adjudication in the instant case, and the sentences imposed are legal under the applicable sentencing provisions. See La. R.S. 14:64(B) and 14:64.3(A).

. We note that in order to challenge the conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for postverdict judgment of acquittal rather than a motion for new trial. See La. Code Crim. P. arts, 821, 851, and 858. In the instant case, defendant filed only a motion for new trial, alleging newly discovered evidence. Nevertheless, we will consider a claim of insufficiency of the evidence that has been briefed pursuant to a formal assignment of error. See State v. Dugas, 96-1006 (La.App. 1 Cir. 2/14/97), 691 So.2d 197, 201; State v. Tate, 506 So.2d 546, 551 (La. App. 1st Cir.), writ denied, 511 So.2d 1152 (La. 1987).

. While the trial court did not note it in the reasons for its verdict, Sterling was incarcerated on the date of the robbery, so he had no personal knowledge of the offense.